The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Please be seated. All right. First case is Island Creek Coal Company versus DOWCP. And Mr. Mattingly, pleased to hear from you, sir. May it please the Court. I'm William Mattingly here on behalf of Island Creek. The case before you this morning concerns a case of statutory and regulatory interpretation. The statute and the regulation are pretty clear. If a minor is informed, communicated by a medical professional that he is totally disabled by pneumoconiosis, he has three years to file his claim. The facts in this case are pretty clear also. There's no question that Mr. Frazier was told in the 1960s, 1970s, and 1980s by three different physicians that he was totally disabled by pneumoconiosis. That came out at the hearing. It was there in the redirect examination by his own counsel. That was not his testimony, I don't think, that he was totally disabled. He was told, according to him, he was told he had black lung, but nobody told him he had to quit working. Judge, I don't believe that is the testimony that was taken. Well, I wasn't there, but that's what's in the brief, I think, of the Secretary of Labor. The hearing transcript is relatively clear. His counsel says, did physicians tell you you were disabled by pneumoconiosis? And he responds that he was. That's in my brief, and we've quoted those sections. And how long did he work after that, another 20 years? No, he retired in 1988. He retired in 1988. And the claim was filed in 2017. Only 12 or 15 years. So this fellow, he went to work in 1952, it says in the coal mine, unless that's a typo. That's true. But the question by the regulation and the statute is not, did you go back to work? Did you have a state claim? But were you told by a physician you were totally disabled by pneumoconiosis? That starts the clock that you need to file your claim. I thought the issue was a little more legalistic. The first time he was told was in the 1960s, and he went back to work. And there's a doctrine of forfeiture, which basically says the clock starts again thereafter. It's a progressive disease and that type of thing. Then he was told in the 1980s by Dr. Rasmussen that he was totally disabled. And at that point, he filed a state claim under the workers' comp, and he was denied that. And the argument is that the state decision rendered Rasmussen's advice a misdiagnosis. The BIA did not address that issue. The BIA addressed the forfeiture issue and said the forfeiture issue created it, and therefore he was entitled to it. The forfeiture issue is really irrelevant because he is a clear statement. So the question is simply, should the BIA decide whether the state law is sufficient to create a misdiagnosis? It just didn't address it. It didn't. And the Benefits Review Board in essence played gotcha with me by saying he went back to work after the surgery. That's what the judge found, so therefore you've waived the issue because he went back to work. But that's not what the judge found. He only found that he went back to work after the surgery in the 1960s. In the 1960s, exactly right. So there were two reasons to extend, to reopen the statute of limitations. The first one was the 1960s by forfeiture, and the second one was in the 1980s by reason of the state decision. The BIA treated the whole case as if it were the forfeiture issue. Correct. And never addressed the statute of limitations. And I've asked this court to reverse the award because I think that the facts. Well, that's on the merits. It is. But it seems to me if there's a statute of limitations issue, we ought to have the BIA work that out, shouldn't we? I don't think you need to. I thought that's your main issue. It is the main issue, but there's. I mean, for us to reverse a finding of black lung benefits, we get into the standard cases. I mean, there's a lot of pressure against the company on somebody that's worked this long in the mines. There is, but I'm relying on this circuit's decision in Consolvi-Williams, which came up with the misdiagnosis rule. That in a black lung claim, if you had a prior black lung claim denied, that created the misdiagnosis rule. And in essence, the court ruled in that published decision that that misdiagnosis could not be used then to establish the claim was untimely, to start the statute of limitations clock. In essence, they read the statute and the regulation and found that that prior claim established extraordinary circumstances, which is something that I think we have to look at in this case. And the regulation refers to an excuse for not filing the claim as extraordinary circumstances. So, Judge Neumeier, the question to me is, is that 19- When was he told that he was disabled due to black lung? In the 1970s and 1980s were the most recent interpretations. And what do you suggest communicated to this gentleman that he was totally disabled? Two physicians told him that. Two different physicians told him that. That was his testimony. But I wasn't sure that they told him that, because his, Frazier's testimony at some point was very meandering and unclear and uncertain and led the ALJ, who is the fact finder here, to say that he had never, it was never communicated to him in the form of a clear diagnosis. Now, what do we do with that fact finder? I don't think that is a fact that is able to be found from the testimony. He was very clear in his testimony that physicians had told him- So you're saying that the factual finding of the ALJ was clear error? Yes. The ALJ's suggestion that it was not clear from his testimony is error. Would the ALJ be in a better position than we are to decide that because he listened to the testimony or she listened to the testimony? The ALJ is unquestionably in a better position, but the ALJ didn't trace the testimony correctly, because- Was the ALJ talking about the 60s or the 80s? The ALJ talked first about the 60s on page- Yeah, I'm not interested in that. I'm interested in what he said about the 80s. It was in the paragraph concerning the 80s, and he said it was unclear when those diagnoses were given to the minor. It's not unclear. The minor testified it was in the 70s and the 80s. And in this case, the state claim, which came from the state of West Virginia, was litigated and filed based on a date of last employment in 1976. We don't have that in the case. The thing that's missing in this case for the ALJ to rely on that state claim is that the state claim was never alleged to establish extraordinary circumstances. Mr. Frazier never said, I relied on my 20% occupational pneumoconiosis award for silicosis to think I didn't have to file a black lung claim. The fact that this gentleman has worked 33 years in the mines, and that could cut both ways, I guess. It could say, well, he's bound to have been told at some point during that 33-year period that he was totally disabled. But then on the other hand, it could cut the other way, and you would think, well, this is long past the point where the interim presumptions kicks in. And somebody who has a coal mining history of 33 years, which is far longer than most of the cases we have before us, the time in the coal mines doesn't approach 33 years. And I'm just a little bit uncomfortable with somebody who's worked that long in the mines not receiving some kind of benefit. And I just, you know, that troubles me. That's a long time for somebody. Maybe that was spent outside of the mines, but maybe it wasn't. What was the nature of his work during that 33-year period? He worked in and around a plant, and he worked driving a truck.  Most all of it. At the end, he was driving a truck. But remarkably...  He was a slate picker. That's all true, Judge. But remarkably in this case... There's no X-ray evidence. And he worked for Island Creek all that time. That's right. And lived on Buffalo Creek and survived the flood. And survived what looks like a cancer operation. And he always went back to work. He's a typical Southern West Virginia coal miner. He always went back to work. Hardworking guy, but that's not the issue. Because if it was just that the Department of Labor... But 33 years and 15 years without underground work gives him the presumption. But the presumption doesn't come into play in this case because the question is not how long did he work. I'm following up Judge Wilkinson's comment. And I'm emphasizing a couple of things that I picked up in the record here about his work. At the end, he was working on top. That's what they call it. Driving a truck or something. And he never developed clinical pneumoconiosis X-ray evidence. Even with all that exposure. How could somebody work for 33 years in the mines and not develop pneumoconiosis? I don't understand that. It's just a long, long time to be working underground and not, you know, many of those years must have been when the reforms in coal mining and when conditions were in a more primitive state. I'm just ultimately not comfortable with somebody who's worked 33 years and not getting any benefits. Do you understand? I understand and I think that is why the agency ALJ said I have to look at this state claim and manufacture a misdiagnosis, which is what he attempted to do. And the regulation doesn't allow him to do that. Not everyone who runs a marathon wins. Not everyone who works in a coal mine for 30 years develops black lung disease. So the purpose of the act is to compensate those who are totally disabled by pneumoconiosis. The statute and the regulation tell them to claim it. They have to file a claim within three years of that communication. If the state black lung claim was denied, doesn't that come close by operation of the law to say that the earlier suggestion of black lung, which was a little iffy to begin with, was a misdiagnosis? It's not a misdiagnosis because we have different legal standards. The state claims operate under a different criteria than the federal black lung claims. But the state gave him 20% disability. That's correct. And that's not 100% disability. Well, you don't have to get 100% disability in West Virginia to get lifetime benefits. So there are differences in the tables and the evaluations. And he went back to work and worked for another 15 years. The fact that the state claim found that he had pneumoconiosis put him on notice and then doctors said you're totally disabled by pneumoconiosis. And he freely admitted that at the hearing. So the question is, was there a waiver based on the ALJ's finding that he went back to work after surgery in the 1960s? The board is simply wrong. That was not a finding that the ALJ made concerning the other two opinions. The two later opinions from the 1970s and the 1980s put him on notice. He needed to file a claim, and he didn't do that. How do you get past the Secretary of Labor's position in this case? You know, it will be interesting to hear in about two minutes what they have to say. No, but how do you get past it? But they're defending what the board did in saying that I waived the issue, trying to make a legal argument that it was waived. It was not. They have not weighed in on whether or not the later findings of the 70s and 80s do establish that this is an untimely filed claim. The ALJ had cited Sharondale v. Ross, a Sixth Circuit decision, and it's clearly not applicable. And I explained that in the motion to the board. That was the case that he cited. You agree that if you get past the statute of limitations issue, that substantial evidence establishes that this gentleman had pneumoconiosis? No, because of two findings the ALJ made. He first found that Drs. Bishita and Drs. Aldabar. How do we get to re-weigh the evidence? Because the ALJ gave the opinions of Dr. Bishita and Drs. Aldabar less weight than the opinions of Dr. Forehand and Dr. Goh. Isn't that a classic situation of whether substantial evidence supports the condition of pneumoconiosis? I mean, you're asking us to re-weigh? I am not asking you to re-weigh the evidence. I'm asking you to send it back to the administrative law judge because he found that Dr. Bishita and Drs. Aldabar ignored the 30-some years of coal mine employment. And it's clear from their reports at Joint Appendix page 43 and 150. They both said this man had sufficient exposure to cold us to put him at risk of developing pneumoconiosis, but for the reasons I give, it is not pneumoconiosis. My time's expired. I will be back for rebuttal. Excuse me one second. Judge Neumeyer, do you have some questions? No, I'm good. Okay, thank you. Good morning, and may it please the Court. My name is Amanda Torres, and I represent the director of the Office of Workers' Compensation Programs. The director requests that this Court deny employers' petition for review. Employer forfeited its challenge to the ALJ's finding that the miners returned to work, reset the clock on the statute of limitations, because the employer failed to raise that issue at the time required, which would have been in its opening brief. I agree with that. It seems to me that's inescapable from looking at the record. The BIA, however, relied on that fact alone to deny statute of limitations and did not address the 1970s and 80s misdiagnosis claim. And it seems to me that the statute of limitations with respect to the 1960s, the forfeiture claim, is irrelevant. But yet that's what the Board relied on. Yes. The Board basically said employer does not challenge, however, the ALJ's finding the statute of limitations reset when the claimant returned to his coal mine employment. That was in the 1960s, after the surgery. And so let's assume that's true. That's what was relied on. But that doesn't answer the question which was raised and not disposed of, which was, and the court said he received a diagnosis from Rasmussen and two others in the 1970s and 80s, and that the claim was that there was a misdiagnosis. But the BIA did not address the misdiagnosis issue. And that was raised and presented to him, and the BIA says that. It relies solely on the forfeiture, which is irrelevant. And so it seems to me that we should have at least a ruling on the statute of limitations because he did file more than three years after receiving the diagnosis in the 80s. Yes. So the record, the evidence of your record and the ALJ's findings are clear that the miner worked from 1952 to 1988 and that he returned to work after each of the diagnoses in the record. Dr. King mentioned the issues with Dr. White's diagnosis. I know, but this is all irrelevant. The whole issue from what I see, setting aside the merits of whether the man has pneumoconiosis, the whole main issue was that the BIA did not address the statute of limitations, which on its face was filed more than three years after he received diagnosis. And the answer is, the miner has argued that the answer is there was a misdiagnosis because of the state claims filed. But the BIA chose not to address that. The BIA chose to rely on the 1960s forfeiture only, simply because the employer didn't present that. But the employer didn't present that because that was not material. He returned to work and he can file thereafter if he develops pneumoconiosis. But yet the board relied only on the 1960s return to work. And that was exclusively because the employer didn't challenge that. And that's the oldie. And so my question is, should we at least have the BIA render an opinion on the statute of limitations? The court could remand to the board to review the statute of limitations, but it should do so regarding both the return to work and misdiagnosis rule, because the same reasoning that supports the ALJ's return to work analysis for the 1960s diagnosis applies to the 70s or 80s diagnosis as well. You can make these arguments. You could have made them to the BIA. The BIA did not address that. And there is a complication in this case, because there is no case that I'm aware of that relied on state diagnoses under the workers' comp laws. The doctrine of misdiagnosis implied in connection with the denial of benefits, of black lung benefits under the federal system. It may be a good argument, but it seems to me it's worthy to have the BIA address that in the first instance. And that's never been addressed. It has not been addressed. This court has not addressed it. And so to allay those concerns, then the response would be to remand for the board to actually determine whether the misdiagnosis rule applies to a state claim. Is he objecting to that? No, the director doesn't object to that remand. The director's position is merely that the result on return to work would lead to the claim being timely filed, and so it's unnecessary to go through the process of having to remand to the board. You want us to conduct that analysis? No, no. But we are asking the court to find that there's only one reasonable result in this case on timeliness, and that is that the claim was timely filed because of the return to work analysis. There was no return to work analysis with respect to the 1980 diagnosis. The analysis there was the ALJ relied on the misdiagnosis based on the state filings. And that is what the employer appealed. And the BIA did not address that. The BIA relied on the forfeiture in 1960s only to resolve the statute of limitations issue. That's irrelevant. And the other issue is open. And you say, well, it's an easy issue. We could decide it. But the answer is it's not so easy because we agree that no opinion has yet decided whether we can rely on state workers' comp decisions to do that. Maybe we can. There's a lot of good arguments. To what degree does a subsequent state black lung claim that's denied make the earlier suggestion of black lung a misdiagnosis? This court hasn't decided that. Now, the Third and Sixth Circuits have addressed that issue. The Third and Morris said that it can as long as the reason for the denial was that the claimant didn't have pneumoconiosis. The Sixth Circuit in Brigance stated that where the reason was unknown, it couldn't trigger the misdiagnosis rule. That had an unusual set of facts where the claimant was granted state benefits for eight years. Let me just say, because remands always postpone these kinds of things, is it open to us in your judgment to say here that the denial of the state black lung case did, in fact, operate to make the earlier suggestion of black lung a misdiagnosis? I see that my time is up. Is that open to us? May I have time to respond, Your Honor? Yeah, sure. No, because the case would have to be remanded for the board because the board did not actually review the misdiagnosis rule. So there's no decision for this court to review from the board. The board fully applied the harmless error doctrine to avoid the question of whether the misdiagnosis rule applies to a state claim. What are you prepared to argue if the case was remanded? The director's position is that that's not properly before the court right now, and we would have to make a determination at that time if it was properly before the board to make the argument. I would say that this is not the most helpful argument that I'm receiving as to what the director's position is or what's open to us and what's not and all the rest. I'm having a difficult time getting a response. And I apologize, Your Honor. The director's position is that in this case forfeiture and the harmless error doctrine applies to leave this court with no substantive review of the timeliness argument that the employer is making. Your position is there was a waiver? Yes. At what point? Before the board. If the court has no further questions, I'll go ahead and take a seat. Thank you for your time. Excuse me, I have a question. What do you contend the effect of the waiver was? Of the return to work analysis? Yes. That this court should not address the substantive issues. Once the employer forfeited the return to work analysis, the issue of timeliness was no longer before the court. The employer doesn't make that argument, though. The employer agrees with you that there was a forfeiture, at least by waiving it. And that's not the argument, the viable argument. The argument that was raised with respect to the 1970s and 80s diagnosis was misdiagnosis. And the court chose not, the BIA chose not to address that. They relied on the forfeiture with respect to the 1960s. And it seems to me that that's an incomplete, that waiver doesn't cover the ground. And so the director is requesting that the court remand to the board for them to actually engage with an analysis. It sounds to me that's reasonable. Yes. Thank you. Thank you. Good morning, Your Honors. I'm Sam Petzonk on behalf of Mr. Frazier. And I'm just going to try to pick up, if I may, on the discussion. And I'd like to focus on Judge Niemeyer's concern about whether the board addressed the misdiagnosis issue. Because my reading of the board's decision and the ALJ's decision, if you look at Joint Appendix 256 and 257, which is the board's decision, and you look at the ALJ's decision at Joint Appendix 227. The ALJ addressed it. Yes. The ALJ addressed two aspects. One is that there was a forfeiture with respect to the 1960s diagnosis. He went back to work, and the court relied on that. The ALJ did. I mean, the IJ did. The Immigration, not the Immigration. It's the Benefits Review Board. The BRB. Yes. But both claims with respect to limitations were addressed by the IJ. But the BIA laid it out that both claims were made. It laid it out that both claims were made. But then the court said, employer does not challenge, however, the ALJ's finding that the statute of limitations reset when claimant returned to his coal mine employment. That was the 1960s return to work. Yes. And so since that wasn't challenged, the court said that has been waived, and then it relied on that waiver. But, Your Honor, they did not determine the rest. If I may, Your Honor, at JA 257, the review board says, even assuming arguendo that the ALJ erred in finding doctors Combs, Weitz, and Rasmussen's diagnosis constituted a misdiagnosis, any such error was harmless. Harmless because it relied on the waiver. Because of the return to work. But the BRB did analyze and agree with the ALJ that there was no misdiagnosis. And that gets to Judge Wilkinson's point, which is standard overview here is limited. Hold on. Please let him make his argument. Go ahead. Thank you, Your Honor. The standard of review here is limited. And I think Judge Wilkinson said exactly correctly that as a fact-finding function, there's classic medical fact-finding in this case. There's also classic fact-finding as to the presence of the misdiagnosis. And Your Honor is exactly, I think, correct. That you can defer to the ALJ and the board where the ALJ and the board find there was no factual trigger for the finding of misdiagnosis. The question that I'm having here is whether the record taken as a whole, whether there's anywhere in this record that this individual received a clear diagnosis of total disability due to black lung. That would have set, that would have put him on notice that he had to move ahead and file a claim. There was not. And the problem that I'm having is taking this record as a whole. I cannot find that this gentleman received a clear diagnosis of total disability that would have put him on notice to go ahead and bring the claim. And neither did the ALJ and neither did the BRB. And they both said that. And the Benefits Review Board had exactly your analysis that there was no finding of total disability conveyed to Mr. Frazier. And so therefore... If that's not there, the statute of limitations does not run. Exactly. And if you look at JA 214, what Mr. Frazier actually explained on direct questioning was, quoting him here, I can't remember any doctor telling me that. And it's the ALJ's fact-finding function to determine whether there was a diagnosis. And the ALJ set forth the right case law at JA 227 as far as the nature of the written clear diagnosis that must be communicated to trigger the statute of limitations under the Black Lung Act. The ALJ got all that law right. And no such diagnosis was made. That's a fact the ALJ found. And the BRB upheld that finding. And so, Judge Nima, I don't think you need to remand for that because the BRB acknowledged what the ALJ found in this regard. The BIA acknowledged that he claimed he had been diagnosed by three doctors in the 1970s and 80s and did not question that. The BIA assumed he was told that. That's not true. If you read the BRB's opinion, Your Honor, at JA 256, they say, As the ALJ noted, the record does not contain any written evidence predating the filing of the present claim to indicate total disability. And they go through and they talk about. Didn't he testify consistently that the doctors told him he had black lung but never told him he couldn't work? Exactly. Exactly. And the ALJ found that fact. They never told him he couldn't work. They never told him he was disabled. Exactly. So I think, Judge Wilkinson, you've got your finger right on it, which is you can affirm the BRB and say, Yes, he was never told. There was never a sufficient, clear diagnosis of total disability. You didn't read that record correctly. That record says that he never received the diagnosis in writing. He was told orally. And the court then concluded that made no difference. And then it went on to explain that the diagnosis did not trigger the limitations because there was a misdiagnosis. The very next paragraph. So the whole discussion there is whether it needs to be in writing. And it was clearly oral, but it was clear that he made that. He testified to that three or four times. Respectfully, though, that is a fact finding by the ALJ, that it wasn't a sufficient diagnosis, be it in writing or be it oral. It's a finding of fact. ALJ acknowledged that. What the ALJ concluded was that it was a misdiagnosis. That's what he concluded. It didn't conclude that the diagnosis wasn't made by the doctors orally. Well, in any event, I think I tend to agree with Judge Wilkinson that no doctor ever told this individual clearly that he was totally disabled. And so even if they had, the misdiagnosis rule would save him. There's at least three or four times in the transcript where he said that. And he said it was Dr. Watt. He couldn't place it whether it was the late 70s or early 80s. He said he was told that. He was totally disabled by black lung. It was unequivocal. The ALJ says it, and so does the BIA report that. Your whole quotation is to whether it was in writing. And the BIA said it did not need to be in writing. But it said the fact and the way the court disposed of it is ALJ did it because it was a misdiagnosis, not because it wasn't spoken. Well, actually, if you look at the case law the ALJ relied on, the case, Adkins, says that it should be a written diagnosis in order to trigger statute of limitations. So I think he was applying the case law correctly as he understood it. But if you were to go ahead and find that there was a finding, an adequate written or other finding of total disability that was conveyed to the minor so as to trigger this misdiagnosis analysis, the rationale of the Williams case that Mr. Mattingly described certainly supports applying the misdiagnosis rule here. It doesn't matter whether the misdiagnosis is superseded by a state workers' compensation decision or a federal one. That's an issue we've never decided and is questionable. The other circuits are not totally clear on that either. And I'm simply saying that we have a Chenery problem on that. We don't. The Department of Labor has taken the position which I think is a right one. We don't have that decision before us to review. Well, Your Honor, yes. The 33 years that he spent in the mines, was most of that underground? I believe that it was, yes, Your Honor. I think Judge King addressed that as well, yes. He did work towards the end of his career outside. But what matters under the Black Lung Act is whether you were regularly exposed to coal dust. He worked at an underground coal mining complex throughout his career. I think towards the end he was working at the outside part. But under the Black Lung regulations, it's presumed statutorily that if you are working at an underground coal mine site, even on the outside, you still have dust. You're working in the site, the exposure? Yeah, where the belts come out and dump the coal onto the ground. The exposure is presumed by regulation to be comparable. I understand, but the exposure wouldn't be as intense as if he had worked underground? Well, I think it's immaterial because the regulations presume that it is as intense in terms of your exposure history. Island Creek operates underground mines in Logan County. That's correct. Well, they did. They did. And he was with Island Creek the entire 36 years. Yes, that's right. To 88, except while in the military or in the hospital. That's my understanding. So I think that, again, certainly they forfeited their return to work argument, and there doesn't seem to be a disagreement about that. If I may, just with whatever time I have left here, address the substantial evidence issue on the medical findings, I certainly think you can affirm the BRB on the misdiagnosis issue because they did analyze the record adequately, and I hope you will. And there's no need to remand it. Certainly, Mr. Frazier is 95 years old at this point, and remanding this case could drag it out for an indeterminate amount of time. I hope you don't do that. But why the ALJ credited Dr. Goh in forehand, certainly there's plenty of substantial evidence in the case to support that. Most interestingly here, the company's doctors claimed that this man had asthma. But if you look at the pulmonary function testing in this record, his breathing did not get better with inhalers, and asthma is an inflammatory condition that improves with inhalers. He had just a barely enough improvement from the inhalers to even be perceptible under the pulmonary function testing standards. And so our examining physician, the Department of Labor's physician, said there's a huge amount of fixed impairment in this man's breathing that doesn't get better at all with inhalers, and asthma cannot explain all of that impairment. So the ALJ reasonably credited those doctors with saying, here's a lot of breathing impairment here that doesn't get better with inhalers, and that could only be explained by coal dust exposure. So there's plenty of substantial evidence to support the placement of greater weight on the opinions of Dr. Goh in forehand regarding the presence of totally disabling impairment. And likewise, as you've noted, your honors, there's certainly enough evidence to support the diagnosis of legal pneumoconiosis. It's long established that if an ALJ finds on the record that there is legal pneumoconiosis, then it's logical and proper for the ALJ to credit more heavily the opinions of the doctors who share that diagnosis. That's what he did here. Suppose we are thrown back on the question of whether the subsequent state black lung claim was denied and whether that operated to make any earlier suggestion of black lung misdiagnosis. Is it your view that we should go ahead and not reach the question or resolve the question? Or what is your thought about that? Two steps, your honor. First of all, you don't need to reach it because, like you say, there was no diagnosis to get us into that analysis. The ALJ found there wasn't a clear diagnosis and you can just acknowledge that and you don't have to reach the substance. But if you go to the question of whether the misdiagnosis rule can apply by way of a state workers' compensation analysis, you should allow that. But that's a much broader basis for deciding the case. And a lot of times when a court, I don't think there are any other courts, they've all shied away from that it seems to me. And I'm a little bit reluctant to charge into a broader question of the operation under law of a state black lung denial if I don't have to. I agree. And I think as you indicated at the outset, you don't have to. You can simply find there was no clear diagnosis under that. Can I ask you a question? Yes, your honor. This is from the BIA's opinion. BIA said claimant testified, Dr. Combs told him in the 1960s that he had black lung. Dr. White told him in the late 1970s that he had black lung. And Dr. Rasmussen told him in the 1970s or early 1980s that he was totally disabled to pneumoconiosis. Hearing transcript 23, 24, 34, 38, 40. Many times those things were testified to. And then the BIA goes in to launch into the fact that the ALJ also observed the claimant filed West Virginia claims and so forth. So I don't see any ambivalence in that, do you? Is there any other statement in the BIA that hesitates that that fact was not true or not clear? I mean, he cites five, six pages of the transcript where the guy testified, and I found them myself. Right, but I don't think that the ALJ found that that constituted a communication. I'm talking about the BIA. Is there anything in the BIA that suggests that there was not a diagnosis? It looks to me like that's just as clear as a bell. Well, I think that there is something in the BRB's opinion there which finds the ALJ never found that there was an adequate diagnosis to trigger the statute of limitations under the Adkins against Donaldson Coal Company case, which is what the ALJ relied on for that issue at JA 227. These are all issues of whether you should apply the limitations because, first, there was an argument, a question about whether it had to be in writing, and the BIA said it did not have to be in writing. But then there's an issue of forfeiture, which was not challenged by the employer, and then there was an issue of misdiagnosis, and the BIA said it didn't need to reach that because there was a waiver. Well, likewise, you all don't need to reach that because even if there was a, even if the ALJ was factually wrong and there was a diagnosis of total impairment due to black line, which I don't think the ALJ ever found that there was, but you all don't need to get into that analysis in this case, Your Honor, and I think I. Was the BIA in error in making that finding? I think that I just read that BRB decision a little bit differently, Your Honor. I just read it out loud to you, and I didn't see any exception or condition on that. Well, they say even assuming that those findings were diagnoses that triggered the misdiagnosis rule, the error was harmless. That's referring to the state determinations. Right. I just don't think that it would matter regardless because even if it does constitute a diagnosis of impairment which triggers a statute of limitations, it would be immaterial because the misdiagnosis rule would resolve it in the minor's favor. So you don't need to get to that issue because the error would be harmless. So I hope you will affirm the BRB, not remand this case, and allow this man to conclude his federal black line claim. Mr. Mattingly, you have some time for rebuttal, sir. Thank you, Your Honor. The directors agreed that there are third and sixth circuit cases that talk about state claims. There are. But those were state claims that were denied. When you look at this state claim, it was not denied. It was a 20% award. You can't use the shelter of the state claim to justify a state claim. And then say there was a misdiagnosis because it wasn't a denial. And that comes out of the Williams reasoning that in a federal claim, if you have a prior federal claim that's litigated and denied, the claimant can rely on that denial to wipe the slate clean of prior opinions. That same thing cannot happen in the interplay between federal and state compensation claims because they don't use the same criteria. Why would we treat those differently in your view? They don't use the same criteria. The state claim is a partial award. He got 20%. It's not clear what that means. And it's not clear that that contradicts Dr. Rasmussen's assessment that was told to him. I take your point with respect to the misdiagnosis rule and the fact that federal and state claims proceed on different tracks and with different criteria. But that still leaves, I think, your situation. The hardest thing, it seems to me, from your point of view, are those ALJ findings about his interaction with the doctors. And Judge Niemeyer points out and makes a good point about if we had been ALJs, we might well have said that these conversations with the physicians clearly told this man he had total disability due to pneumoconiosis and then he's charged with filing a claim. But a lot of times we affirm fact-finding even though we have a notion that if we were the fact-finder, we might have done it differently. And I'm just wondering, those ALJ findings are the hardest thing, I think, for you to deal with because they leave us with a record that in its totality does not convey the firm conviction that the necessary clear diagnosis was made to this man. Judge, if you look at page 227, the last paragraph of the ALJ's decision there on that page, he states, claimant recalled Dr. White and Rasmussen finding him totally disabled from black lung. He cites the pages of the hearing transcript. In this room, I was the only one there for the hearing. The recollection I have is he was clear, although when you read the words, it does sound as if someone is stuttering or hesitating. But it was clear and it was repeated multiple times. So I think you can take safe harbor in the ALJ's finding there. The other thing I'd like to point out, using the back door. Let me ask you, does the ALJ question the testimony on that regard? It looks to me like he reports the same thing the BIA did. I don't think he does, Judge. In other words, there's no question that he agrees that he was told he was totally disabled by pneumoconiosis by at least two doctors in the 70s and 80s. Correct. They looked for a way not to have to apply the three-year limitation. The only observation about it is the ALJ said there was no written evidence of that. Correct. And then it goes on to the misdiagnosis. And this court ruled and the ALJ noted that same page in the Henline decision. It doesn't have to be a written. The statute and the regulation says it has to be a communication. Well, the BIA, the board agreed. Agreed. So that's not an issue. But the question is whether there was a clear finding of fact. And the ALJ looked to me like he made as clear a finding as the BIA did. I agree. The other thing, if I may, Sharondale v. Ross, the Sixth Circuit decision that talks about return to work, there are three reasons they find that that claim was timely filed. There was a prior denied claim. And within three years of that denial, he filed his other claim. So the talk of return to work is all surplus. You didn't need to get there because it was less than three years, so the statute didn't apply with the misdiagnosis rule. We thank you. Paul, do you have any further questions? Nothing. We thank you both. We'll come down and reconcile and move directly into the next case.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, Robert B. King